All right, our next case this morning is Kesters Merchandising Display International versus SurfaceQuest, number 243112. And we'll let counsel get settled and once you are, we will proceed. Sorry, I'm short. Can we adjust the lectern for her? Does that go up and down? Oh, a little closer? Is that good? That's good. Okay. All right. Okay. Good morning, Your Honors. My name is Theresa Young. I am coming from Baker Sturkey over in St. Louis, Missouri. I'm here representing Kesters Merchandising. The parties have been referring to it as KMDI, and I'll be doing that in the argument. The other party I'll be referencing is SQ because, again, that goes with the briefing. In this case, KMDI has brought a claim under the Lanham Act for advertising that it believes contains misrepresentations by SQ as to the products. The products that these parties are advertising in their various mediums are a lightweight architectural element. I brought a little sample just because my client sent it to me this weekend to the extent that it helps you visualize it. It is effectively a dense foam core that can then be either painted or be wrapped with stickers, other things that make it appear to be a different surface. Could you tell me what evidence you have of injury? So on the issue of injury, Your Honor, we have two different arguments.  Our first argument is that we would have the right to a presumption of injury. And effectively, that's coming from the fact that these two companies are really the heavy hitters, the two substantial corporations that were acting within the same sub-market that had the same subset of products that they were offering. But there was more than two in that market? There were some what we would consider insubstantial companies. Well, you would, but would they consider themselves insubstantial? Well, certainly they're not doing the same things. Some of the other companies are using wood as opposed to the fabrics that we use. Both SQ and KMDI use this sort of dense foam core from a layman's term is how I understand it. And one of the things that that does is it makes it so light that, for instance, one of the things that KMDI has done is a wood kind of spiral across an entire ceiling, and they were able to suspend it with just a few wires. Obviously, that's not something that you could do with wood. And so, you know, some of those players use things like wood, use heavier materials, more expensive materials to get the same effect. Also, a lot of them are local. They're not dealing with national clients. They're not, you know, doing this work throughout the entire United States. Do you have any evidence other than Mr. Walter's affidavit to support what you just said? It really does come down to Mr. Walter's affidavit. And so if we decide that Walter's affidavit was submitted in support of SQ's motion for summary judgment, or I'm sorry, in support of your motion for summary judgment, not in response to SQ's motion for summary judgment, you would acknowledge that under Vitamins Online that there were more than two significant competitors. It really boils down to whether or not we can entertain the Walter's affidavit. I think that the Walter's affidavit certainly is very important to this case, and we would argue that it should be considered, obviously. You know, the way that these arguments developed during the summary judgment proceedings was that, you know, the Walter's issue or the issue that Mr. Walter's provided the affidavit for really came up during KMDI's motion for summary judgment. It came up during the time in which SQ was responding to our summary judgment motion. And so by virtue of that, it, you know, wasn't included in the original. However, I can tell you that the attorneys who were in front of the district court understood and believed that everything was going to be taken together. It was their understanding that these two motions were going to be considered together and that the evidence would be considered together. And so that is why they- Isn't that the wrong question? Isn't it what the judge would have considered? If you're the district judge and you have KMDI's motion for summary judgment and SQ's motion for summary judgment and you set this for hearing, as the judge did, for both motions, still wouldn't the judge naturally look at the arguments and the evidence that was presented in connection with SQ's motion for summary judgment? And if he decides that first, your motion for summary judgment then becomes moot because the judge would have already granted SQ's motion for summary judgment and the Walters affidavit was never submitted in connection with SQ's motion for summary judgment. What do you think? So in some circumstances, I think that that would be the case. I think that in this particular case, these motions were so intermingled that effectively ruling on one is ruling on the other. The issues presented were nearly identical between the two motions, and so there wouldn't be the chronological step of one versus the other. They really were taken together. They weren't argued separately. They were argued together, they were considered together, and they were ultimately decided together. Did ServiceQuest ever have an opportunity to respond to the Walters affidavit? So the Walters affidavit was in the reply to our summary judgment motion. However, they would have, under the rules, had the opportunity to request a certain reply in order to respond to that affidavit, including to provide an affidavit of their own in response as well. They did not request that during the summary judgment. But they would have had to obtain a deviation from the local rule, they would have had to obtain special permission, and they would have had, in effect, as a practical matter, to have waived any argument that the Walters affidavit shouldn't be considered, at least in connection with a response to SQ's motion for summary judgment. Is that fair? I think that it would be fair to say that they would have had to move for leave to file the surreply. I think that that type of a surreply is contemplated within the rules and the local procedure, and so I'm not sure I would say it was outside of that. But certainly they would have had to seek leave. Again, if it were me in their position, I probably would still argue that, you know, it should have been included in the other motion as an alternative argument if I were to do a surreply. But I think I understand your meaning. And certainly this issue was coming late in the summary judgment, you know, proceedings. Again, that's how the arguments developed. And so, you know, that was when KMDI had the ability and went ahead and, you know, put that forward. Well, apart from this procedural thicket, was there any evidence presented on relevant market in the nature of cross-elasticity analysis? So the evidence that was put forward by Mr. Walters Well, I just want to know if there's any cross-elasticity evidence from anybody, including Mr. Walters. I don't believe that there's any specific cross-elasticity evidence. Don't you need that to determine what the relevant market is? I think that in a summary judgment setting, at the point where we are creating a question of fact, I think more needs to get into it. So, in other words, I think that that makes a very difficult row for me to hoe. If I were to argue, you know, that our summary judgment should be granted on that same ground. But I think that we did present sufficient factual questions as to this issue to defeat summary judgment motion of a policy council. So, as I understand the argument, it's KMDI and SQ using a common material. And they're the only ones who do use that material. But there's still the question of whether consumers consider other material as adequate substitutes for the material that KMDI and SQ use. And in the absence of any analysis of that, how can anyone say that the market consisted of just these two firms? I think that what I would point you to, Your Honor, is the list that we gave of what makes this a unique sub-market. And while there are, in other words, you can take wood and you can put laminate over the top of it. You can take a particle board and put laminate over the top of it. That is an entirely different product than what KMDI is doing. What they're doing is creating something, again, that is extremely lightweight. You know, it therefore can be suspended. It can be stuck to walls. I understand that part of the argument. But in terms of the people or entities that buy this stuff, do they care? Do you have any evidence that it even matters? Well, I think that if you look at the type of products that they're developing, those are not products that could be made out of wood. And so I'm, which I think is, I'm trying to in a roundabout answer your question. Is there anything in the record that supports what you just said? That the products that are being made could not be made out of wood? Is that your question? Well, I guess it is. I'm not really sure, but go ahead. So there is evidence that the wood would be much heavier, that, you know, suspending wood, you know, isn't a viable option. You know, things like that, yes. Well, you don't argue that there was any competitive advertising done by SQ, do you? We do argue that there's competitive advertising and that they were placing our photos. Well, but that's, you're saying that they represented your product as their product. Right. But that's different than comparative advertising. They never used the name KMDI in their advertising. And you're pointing out to them that they were using your product. And you say, oops, we're sorry about that, we won't do that anymore. Right. Isn't that correct? Yes, that's correct. And I apologize, Your Honor, I think I misheard what you said. You don't have any evidence of injury, of any economic evidence that your client was injured. You can't get a presumption simply because you say, I want a presumption. Right. And that's it. I mean, the presumption that we're asking for, the presumption of injury, flows from the fact that this was a submarket. It doesn't flow from anything. And I would have to respectfully disagree, per my brief. But, you know, that's where we're talking that we believe we're squarely within Vitamin Online. You know, that's kind of the case that we are pointing to. The circuit has acknowledged through that case that, in fact, the, you know, a presumption of injury is an appropriate thing to employ. It is, again, we think that, you know, this case really boils down to what is happening across a lot of markets today, which is that people are buying things by looking at photos online. And so our photos were used. But nobody knew they were your photos because it didn't say this is a KDMI photo. Well, it was photos of KMDI's products. But nobody knew that unless they had a magnifying glass and could look at the product. I understand what you're saying, Your Honor. But in the end, the product that was pictured is a custom product. Everything that KMDI is custom to their customers. So the customers give some specifications, tell them what they want it to look like, what size they want it to be, et cetera. And then they go ahead and they create that. So those photos are a representation of the craftsmanship that KMDI brings to what they're doing. Could I just make sure I'm understanding your response to Judge Kelly? Sure. So we have the argument for presumptive injury. Are you also arguing that there was actual injury? Or is it just the presumptive injury argument that you're making now? Because in SurfaceQuest's brief, they say you don't even attempt to argue actual injury in your opening brief. Is that correct? So the actual injury really is flowing from the fact that SQ had $8 million worth of business during this time that they were displaying largely almost exclusively photos of KMDI's product in order to secure their customer and to secure sales. And so it flows from that that money was being diverted from and work was being diverted from KMDI to SQ. But you're not, and I do understand that, you're not also arguing that there was a particular customer that decided to buy from SurfaceQuest instead of KMDI? We have two different, both Acme and the Hy-Vee accounts that it appears that SQ went in and used photos of our product in order to secure those accounts. I think there's a question of fact as to whether or not that was the deciding factor, whether it was cost, you know, other things. But it's our position that there were direct sales that were lost. Am I correct in thinking that you didn't make this argument about Hy-Vee in district court? I'm sorry, I didn't hear what you said. That you do have an argument of actual injury based on Hy-Vee here, but you did not make that argument, as I understand it, in district court, that there was an actual injury because Hy-Vee decided to purchase from SQ as opposed to KMDI. I could be wrong about this, Your Honor. Off the top of my head, I do believe that was presented in the district court as well. Well, if we find you're not entitled to a presumption of injury, is that fatal to your case? It's not helpful to my case. It's not helpful, but is it fatal? I think that, again, there's enough in this record to show that SQ was getting deals from other clients that had previously been KMDI clients. I think that there's enough there, again, to create a question of fact to get us through a summary judgment motion. Thank you, counsel. Thank you. May it please the court. Brian White on behalf of Surface Quest. This case on appeal begins and ends with KMDI's failure to prove injury under the Lanham Act. We've raised multiple other issues in our briefing, and what I'd say to the court today is those flaws in KMDI's claim, while fatal, simply reinforce why the district court's judgment, in this case, in favor of my client, was appropriate. Simply put, KMDI failed to present evidence to create a genuine issue of material fact on essentially every element of a false advertisement claim, and for that reason, we're asking that this court affirm Judge Melgren's granting of judgment in favor of our client. I don't think at this point there's any dispute that this is a false advertising claim and that the elements of a false advertising claim are laid out pretty clearly in the Mimbeau Bakeries case of the 10th Circuit, so I won't repeat them, and I think given the nature of how argument played out, I'm going to start where the district court started, which is on the issue of injury. The Supreme Court has very expressly stated that to invoke the Lanham Act's cause of action for false advertising, the plaintiff must plead and ultimately prove an injury to commercial interest in sales or business reputation approximately caused by the misrepresentations. I would assert to this court that on the issue of actual injury, evidence of actual injury or actual harm, that KMDI did not address that within their briefing to the court of appeals and therefore has waived it. Had they briefed it, had they addressed it, that there's simply no evidence to support actual injury. So what they're left with is a very narrow presumption. Before we get to presumption, what about this Hy-Vee project, and there's reference to this speck, quote-unquote, in the record mentioning Surface Quest. Does that create any genuine factual issue on actual injury? No, it doesn't, and it's because it's a speck. It doesn't, the speck itself, why it was in there is unclear. Plaintiff, I take a step back and confirm that the burden of proof is on KMDI on all of these issues, and so the speck alone is simply that. The actual evidence as laid out in the briefing was that Surface Quest had nothing to do with that Hy-Vee work. It was actually done by a different competitor, C.G. Whitthewitt. That's the evidence. It's uncontroverted that the actual work was done by a different competitor. So it didn't go either to KMDI or Surface Quest. That is 100 percent true. Everyone that testified from Surface Quest testified we had nothing to do with that project. We weren't even aware of it. C.G. Whitthewitt's corporate representative was deposed, and they said that was our work and Surface Quest had nothing to do with it. KMDI presented no evidence to the contrary, and what I again represent is that one little statement in a speck with our name on it doesn't change or doesn't create a question of fact as to that specific lost, alleged lost work. Well, as a segue into the presumption of injury, under the Vitamins Online case, does it require a two-player market for the presumption, or does it require a sparsely populated market? So my answer to that question is to go directly to what the Tenth Circuit said in that case, which is on page 1240 of the opinion. We find a lot of the discussion in that case is discussing what other circuits have done, correct, because this issue at least hadn't been directly. There had been some discussion of presumption in prior cases, but this is really where the Tenth Circuit comes front and center with it. And this court says that we find this formulation of a presumption of injury sensible and conclude that once a plaintiff has proven that defendant has falsely or materially inflated the value of its products or deflated the value of plaintiff's products, and that plaintiff and defendant are the only two significant participants in the market, may the court presume. So I guess it's a long way of getting to, I believe, that it is essentially narrowed down to two participants. But if it's going to be expanded further, it still has to be the only two significant participants in the market. And, again, that would be something that KMDI had the burden to establish, and there is nothing in the record to establish that burden. What's the difference between a sparsely populated market and strictly two market? Was the district court just wrong on that statement? The district court's ruling on that issue? So here's what I'd say is the term sparsely populated market is a little bit vague. It's not 100% clear, but I think then you have to turn to what the words actually say, which is a significantly two significant players, only two significant players. And I think what the court was trying to say, and if you look at all the other cases, all the other cases that are cited both by the Tenth Circuit and in other cases, it really does essentially come down to two big players. Whether it's Tropicana and Coca-Cola or DirecTV and the local cable company, it's two big players in the market. And so what I think this says is, well, perhaps there's a few other very de minimis players that don't count, but it really has to essentially be two players. And the reason is sound, why you want it to be that way, because we're going to apply a presumption of injury, right? We're going to say you don't really have to come forward with evidence of injury. We're going to apply a presumption. Well, why would you want to do that? Where you essentially have, if it's a comparative advertisement, which I think we've conceded that this wasn't the case, but if it's a two-player market and you falsely advertise, it's a presumption you're going to harm the other player. But if there's three or four or five or ten or in this case probably hundreds of different players in this light architectural element market, then each one of them could hypothetically come to us and make the exact same claim for the exact same amount of money without having to parse through what harm was actually caused to a specific company. And that's why it's got to be so limited, and that's why it's been so limited in the cases. You agree, though, don't you, that KMDI and SurfaceQuest are the only firms that use this type of material? No, I don't. And I don't think the record supports that. And here's why. I think KMDI's position actually proves SurfaceQuest's point. The Hy-Vee case that they want to seek damages on, that was a project done by a separate competitor, CGWitVWit, who uses a lightweight composite material and wraps it with films that SurfaceQuest in some cases supplies. When we initially got into the market of trying to make these lightweight beams, we went to Classic Acrylics, and Classic Acrylics did the same thing. They created these beams using composite material. And I'm going to stop myself and also make this point, that it is somewhat unfair for plaintiffs to try to make this comparison of products when throughout the entire case they refused to really tell us how they did their product or what it was made of. That's just a fact that we pushed. How did you make your product? What was it? What's it made of? It's protected. You don't get it. And now they want to say, well, our product is essentially like your product. How do we know that? Do we have to take your word for it? We shouldn't have to. What I can tell you is there are plenty of other vendors, competitors, including the ones listed in the briefing, that can do lightweight beams. What about the testimony from the KMDI executive that these other companies were a bunch of losers, coupled with the fact that we view the evidence in the light most favorable to KMDI in response to your motion for summary judgment? Can a reasonable fact finder reasonably infer from that testimony, viewing the evidence favorably to KMDI, that these other competitors, maybe like Hy-Vee, or that sold Hy-Vee, some of these other minor players, were not significant participants in the market under Vitamins Online? Yeah, I guess I view that testimony a little differently in that I view the testimony of the inventor of Microlight and the owner of the company saying there are a bunch of competitors out there, they all do stink, as essentially a bunch of losers. I paraphrased it. Yeah, but I don't mean to pejorate or to pick on you, but we're talking about the antonym of significant in terms of being losers. I don't care whether or not he thinks they were bad companies, but whether or not they were losers creates a reasonable inference that they were not significant competitors. I'm just asking you to comment on that testimony, viewing the evidence favorably to KMDI, why that doesn't create a reasonable inference that KMDI and SQ were the only significant competitors. I guess I'd start by saying that wasn't an argument that has been presented on appeal. It wasn't? Not that the bunch of losers should create it. You don't think KMDI made that argument in their brief? I don't believe so, but if they did, I apologize that I missed it. But even if they did, I would say that the focus on that should be on the bunch, which are their multiple competitors, whether his opinion is that they're good competitors or bad competitors, doesn't really go to the fact of whether or not they're significant in the market. And again, what does it mean to be significant in the market? A lot of these things should be fleshed out by the person who has the burden of the proof, and they didn't do it. You actually have the burden of proof on your motion to show a right to judgment as a matter of law, viewing the evidence favorably through the non-movement. You said that three times, and I just question why you keep saying that they have the burden. Certainly in a trial they have the burden. Well, they have the ultimate burden to prove the elements of the claim, and so they have the ultimate burden to come forward with sufficient evidence to create a question of fact. And that fact certainly, in my opinion, doesn't support a question of fact on a two-player market. It, if anything, supports our position, which is there are a bunch of competitors out there, which is, again, laid out in the brief, at least 14 or 15 identified, that can create lightweight architectural elements. And I also think it's important to go back just procedurally, Your Honor, and point out that this idea, this presumption, it was never raised in discovery. It was never raised as a claim. It was never stated, hey, we're not going to prove actual damages. We're just going to rely on this presumption. How do you do that at a deposition? Well. I mean, in an interrogatory I can see, you know, in a contention interrogatory, but I'm not sure that I follow that they didn't raise the presumption that that's not fair game. Have you argued this previously, that we shouldn't even entertain a presumption of injury because they didn't tell you during discovery that they were going to raise this legal theory? Yeah. It was part of our brief to the district court, and I believe it's in our brief here. And the contention interrogatories upon which we rely are attached to the appellate briefs. I litigated the case for three years and worked very hard to try to figure out what is. . . So just walk me through how we write the opinion. Do we say, well, under Rule 37 of the Rules of Civil Procedure, we should sanction KMBI by not entertaining their theory on appeal that there was a presumption of injury because they didn't answer a contention interrogatory? Is that your argument? It's part of the argument. It's not the only basis. I understand that, but that's how we get from A to Z. I think we get from A to Z by saying you failed to raise it in discovery, you failed to raise it in response to the motion for summary judgment. The presumption argument made on summary judgment in response to our motion didn't even reference Vitamins Online or this two-player market. It wasn't raised, and no evidence was presented of it. And then last but not least, even if we put all of that aside and we want to consider this Walters affidavit, that was clearly untimely, which shouldn't be considered. But if the court says we're going to consider it anyways, I would represent to this court that it lacks foundation for any kind of affidavit. It's ambiguous at most, and it certainly doesn't support the position of the two-player market. Well, there was ample evidence in the record, I believe, that they still compete directly with lightweight agricultural elements across the board, even if it's not exactly the type that either one of them make. Isn't that correct? That SurfaceQuest does? Yeah. SurfaceQuest, what I'd say is the record certainly supports that SurfaceQuest was attempting to compete in what I would call the beam, the lightweight beam market. And when we filed our motion, we said there's all of these other dispositive issues that are fully dispositive, not just the injury, but materiality, et cetera, not false, those type of things. But if we're going to boil it down and the court is going to say you're going to be able to move forward with something, the reality is the only place that we actually competed was on the beam market, and if this case were to move forward, which is our position it shouldn't, that should be the only place it moves forward. Thank you. I appreciate it. Thank you, counsel. Did we have any rebuttal time? All right. Thank you, counsel, for the arguments this morning. The case will be submitted, and counsel are excused. Thank you.